UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAM JONES,

    Petitioner,

v.                                              Case No. 8:16-cv-3235-T-02AEP

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

    Respondent.
_____/

## ORDER

On November 14, 2016, Petitioner Sam Jones constructively filed his Petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody. Dkt. 1. He seeks relief from a 1994 Florida state court conviction. *Id.* at 1. Respondents have filed a response in opposition. Dkt. 9. Petitioner filed a reply. Dkt. 21. The Court finds that no hearing is necessary and denies the petition.

**Background**

On December 8, 1994 a jury found Jones guilty of first-degree murder, attempted robbery, and conspiracy to commit robbery. Dkt. 12-1. He was sentenced to life in prison with a mandatory twenty-five year term and three concurrent terms of 14 years and 9 months imprisonment. *Id.* He then appealed,

1

and his conviction and sentence were affirmed by the state appellate court. Dkt. 12-2; *see also Jones v. State*, 686 So. 2d 590 (Fla. 2d DCA 1996). On January 16, 1997, the appellate court issued its mandate. Dkt. 12-3.

On December 8, 1998, Jones filed a Motion for Postconviction Relief. Dkt. 12-4. In October 2000, the state postconviction court summarily denied this motion. Dkt. 12-5. Jones appealed this denial. *Id.* On July 3, 2002, the state appellate court issued a per curiam decision affirming the denial of postconviction relief without opinion. Dkt. 12-6. The court issued its mandate on August 27, 2002. Dkt. 12-7.

In August 2003, Jones filed two petitions for writ of habeas corpus in state court, which were denied. Dkt. 12-8. Several years later in April 2008, Jones filed a second motion for postconviction relief alleging the discovery of new evidence. Dkt. 12-9. The state postconviction court denied this motion on February 28, 2014. Dkt. 12-10. On May 18, 2016, the Second District issued a per curiam decision affirming the denial without opinion. Dkt. 12-11. The court issued its mandate on June 14, 2016. Dkt. 12-12.

On November 14, 2016, Jones filed this Petition for Writ of Habeas Corpus by placing it into the hands of correctional facility authorities to be mailed. Dkt. 1; *see Houston v. Lack*, 487 U.S. 266, 275–76 (1988).

## Standards of Review

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998). AEDPA "establishes a highly deferential standard for reviewing state court judgments." *Parker v. Sec'y for Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003). This type of review does not allow relief of a state court conviction on a claim

> that was adjudicated on the merits in the State court proceedings' unless the state court's decision was '(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'

*Nejad v. Attorney Gen., State of Ga.*, 830 F.3d 1280, 1288 (11th Cir. 2016) (quoting 28 U.S.C. § 2254(d)).

"Clearly established Federal law" means holdings of the U.S. Supreme Court "as of the time of the relevant state-court decision." *Id.* at 1288–89. "Contrary to" requires a state court conclusion "opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 1289 (citations omitted) (alterations in original). The "unreasonable application" clause applies only "if the state court identifies the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (citation omitted) (alterations in original).

However, a state court's factual determination "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.* (citation omitted). AEDPA "requires federal habeas courts to presume the correctness of state courts factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Id.* (citation omitted). This is a "demanding but not insatiable standard, requiring proof that a claim is highly probable." *Id.* (citation and internal quotation marks omitted).

Counsel is ineffective under the Sixth Amendment if "(1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense such that petitioner was deprived of a fair trial." *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). But in the habeas context, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009) (citation and internal quotation marks omitted). "If there is 'any reasonable argument that counsel satisfied *Strickland*'s deferential standard,' then a federal court may not disturb a

4

state-court decision denying the claim." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014) (citation omitted).

## Discussion

A. <u>Timeliness</u>

Federal habeas petitions are subject to a one-year statute of limitation. 28 U.S.C. § 2244(d)(1) (2018). It begins running—as relevant here—on the latest of either: "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" or "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* The clock stops running for the "time during which a properly filed application for State post-conviction . . . judgment or claim is pending." *Id.* § 2244(d)(2).

Here, Jones's conviction was affirmed by the state appellate court on December 20, 1996, and the mandate was issued on January 16, 1997. Dkt. 12-2 & 12-3. It became final for the purposes of ADEPA when the ninety-day period for petitioning the United States Supreme Court for review expired: on April 17, 1997. *See Nix v. Sec'y for Dep't of Corr.*, 393 F.3d 1235, 1236–37 (11th Cir. 2004). Accordingly, Mr. Jones had a year from April 18, 1997 to file a petition under 28 U.S.C. § 2254.

Jones did not file any postconviction motions between April 18, 1997 and April 18, 1998. Any motions after this time did nothing to toll the one-year timeframe to file a habeas petition. Therefore, his time to file a habeas petition expired on April 18, 1998—eighteen years before he filed this Petition. Dkt. 1. As such, Jones's Petition is untimely for Grounds I and II.

However, Ground III of the Petition is based on a claim of newly discovered evidence. *See Zack v. Tucker*, 704 F.3d 917, 926 (11th Cir. 2013) (holding that the one-year statute of limitations applies claim-by claim rather than for the petition in its entirety). The one-year limitation period begins to run on the latest of either: "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" or "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1) (2018). Here, it is unclear when Jones could have discovered the evidence forming the basis of Ground III. However, Jones's claim of newly discovered evidence, originally brought in state court in April of 2008, were pending until the state appellate court's mandate was issued on June 14, 2016. Dkt. 12-12. During this time from, 2008 to 2016, the one-year clock for ADEPA purposes was paused. This Petition was filed on November 14, 2016—exactly five months after the clock began to run again. Dkt. 1. Thus, Ground III is timely if the first time Jones could have

6

discovered the factual basis for the claims was less than seven months before April 2008. This is unclear from the record in front of the Court. In any event, Ground III fails on the merits.

B. Merits

Ground III of the Petition raises two issues: the postconviction court made an unreasonable interpretation of the law for a *Brady v. Maryland*, 373 U.S. 83 (1963) violation and an unreasonable determination of the facts surrounding newly discovered evidence. Dkt. 1 at 11–18. Neither of these issues are appropriate for federal habeas relief.

As a preliminary matter, Respondent argues that the claims made in Ground III are unexhausted and therefore cannot be reviewed in a federal habeas petition. Dkt. 9 at 8–9. A petitioner must exhaust all available state court remedies before challenging the state conviction in federal court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). Jones raised both issues presented in Ground III in a state court postconviction motion and then unsuccessfully appealed them to a state intermediate appellate court. Dkt. 12-9 at 1. So, the state claims have been exhausted and are ripe for federal habeas review.

7

However, the claim in Ground III that the state postconviction court improperly ruled that newly discovered evidence did not entitle Jones to relief is inappropriate for federal habeas review. Arguments about the existence or weight of newly discovered evidence potentially relevant to the guilt of a state prisoner—as opposed to the constitutionality of incarceration—do not provide grounds for federal habeas relief. *Swindle v. Davis*, 846 F.2d 706, 707 (11th Cir. 1988). Therefore, the only potential claim properly presented in Ground III is that the postconviction court made an unreasonable determination of the law for a *Brady* violation.

Following an evidentiary hearing, the state postconviction court denied this claim, stating in pertinent part:

> In claim two, Defendant makes the same arguments regarding Mr. Harris's and Mr. Floyd's statements, but frames them as a *Brady* violation. He asserts he meets the requirements of a *Brady* violation because 1) the State possessed evidence favorable to Defendant; 2) Defendant did not possess the evidence and could not obtain it for himself with reasonable diligence; 3) the State suppressed favorable evidence; 4) had the evidence been disclosed, a reasonable probability exists that the outcome would have been different. He alleges the statements would have cast doubt on the State's assumption that a robbery was planned, and this cast doubt on the State's felony murder charge.
>
> Assistant State Attorney Ada Carmona testified at the evidentiary hearing that she did not speak to Mr. Floyd in a holding cell and that he never told her he was changing his statements. (*See* Transcript, Jan. 16, 2014, p. 185, 211). Ms. Carmona testified that Mr. Harris entered his guilty pleas on the morning of December 12, 1994, and later was

8

transported to the Office of the State Attorney to give statements. (*See* Transcript, Jan. 16, 2014, pp. 188-189). As noted above, Ms. Carmona testified that Mr. Harris's statements did not exonerate Defendant and explained that the difference between Mr. Harris's statements was that he "expounded as to when it was that they talked about going to rob Reginald." (*See* Transcript, Jan. 16, 2014, p. 192). She testified that Mr. Harris did not recant his statements to law enforcements officers. (*See* Transcript, Jan. 16, 2014, p. 193). Ms. Carmona testified that if Mr. Harris has asserted there was no plan to rob the victim, she would have considered such information to be *Brady* material and she would have disclosed it (*See* Transcript, Jan. 16, 2014, p. 197).

Assistant State Attorney Douglas Covington also testified at the evidentiary hearing. Mr. Covington testified that he did not have an independent recollection of Mr. Harris's statements, but that under his obligations as a prosecutor he would have turned over any *Brady* material to the defense as soon as possible. (*See* Transcript Jan. 16, 2014, p. 225). Judge Ward testified that she had previously worked with both Ms. Carmona and Mr. Covington, and she had personal knowledge that both attorneys had "the same philosophy about discovery as I did when I was a prosecutor and that was to give up the file." (*See* Transcript, Jan. 16, 2014, pp. 129-131).

The Court finds testimony of Ms. Carmona to be credible based on her demeanor in court. And as noted in claim one, the Court finds Mr. Harris's and Mr. Floyd's testimonies to be incredible. In particular as to Mr. Floyd, the Court notes that on cross-examination and on redirect, he did not testify that he refused to lie for the prosecutors but instead testified that he told them he did not want anything to do with Defendant's case. (*See* Transcript, Jan. 16, 2014, pp. 27-28). He testified that he could not remember what the prosecutors were asking him to say. (*See* Transcript, Jan. 16, 2014, p. 27). Based on the credible testimony presented by Ms. Carmona, and further based upon the fact that Defendant failed to present any credible evidence in support of his claim that the State withheld exculpatory evidence, the Court finds that Defendant has not met his burden of establishing a *Brady* violation. **Accordingly, Defendant is not entitled to relief on claim two.**

Dkt. 12-10 at 7–8 (emphasis in original).

After a review of the record and the applicable law—while deferring to the state appellate court's decision in accordance with the standard for federal habeas review[1]—the Court concludes that Jones is not entitled to relief based on this claim. The state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts considering the evidence presented in the state court proceedings. Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, relief on the claim in Ground Three must be denied.

Under clearly established Supreme Court precedent, in order to successfully allege a *Brady* violation a defendant must prove: (1) the evidence is be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the evidence is material. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). Nondisclosed evidence is material: "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been

---

[1] The state appellate court's per curiam affirmance still warrants deference because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002).

different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682, (1985).

Jones alleges that two individuals were interviewed by the state, gave exculpatory information about Jones to the state, and that information was never provided to Jones. Dkt. 1 at 12–13. Even accepting that this series of events happened—something the state court rejected after an evidentiary hearing on the matter[2]—these statements do not create a reasonable probability that if they were disclosed the result of the proceedings would have been different. Both individuals' credibility as witnesses would have been weak considering each had multiple prior felonies. Dkt. 12-10 at 6–7. Additionally, each gave statements directly contradicting the allegedly undisclosed information—another highly impeachable action. *Id.* In fact, Jones's trial counsel testified that even if she had been given the information, she likely would not have called the two individuals as witnesses at trial. *Id.* at 5–7. Accordingly, Ground III does not present a basis for federal habeas relief.

## Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court

---

[2] Dkt. 12-10 at 2–10.

11

must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Proceedings for the United States District Courts. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A plaintiff "satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (citation omitted).

The Court finds that Jones does not establish this requirement. The Court declines to issue a certificate of appealability in the matter.

## Conclusion

The Court denies Jones's Petition with prejudice. Dkt. 1. The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Tampa, Florida, on September 16, 2019.

/s/ *William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record
Petitioner, pro se